
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



ELIZABETH R. o/b/o J.D.R.[1],

    Plaintiff,

v.

    21-CV-6037 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## DECISION AND ORDER

Plaintiff Elizabeth R. brings this action on behalf of J.D.R., her minor child, under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that J.D.R. was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 10, 11. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's protective application for Disability Supplemental Security Income ("SSI") on behalf of J.D.R. filed on August 24, 2018.[2] Tr. 378-84.[3] Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). Tr. 301-15, 319-21. Following the hearing, in which Plaintiff was represented by counsel, ALJ Mary Sparks issued a decision finding that Plaintiff was not disabled. Tr. 10-23. Plaintiff's request for Appeals Council Review was denied, after which Plaintiff commenced this action. Tr. 1-6; Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both disability insurance benefits ("DIB") and SSI programs under the Act. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI). Disability for children under age 18, however, is determined under a three-step evaluation process. *See* 20 C.F.R. § 416.924; *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009).

[3] The filing at Dkt. 7 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 7 are hereby denoted "Tr. ___."

2

when supported by substantial evidence. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. <u>Disability Determination</u>

Disability under the Act for children under the age of 18 is determined under a three-step test. 20 C.F.R. § 416.924(a); *see Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* "Substantial work activity" is work activity that involves significant physical or mental activities. 20 C.F.R.

§ 416.972(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.924(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.924(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant's impairments meet, medically equal, or functionally equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924(d), 416.925, 416.926, 416.926a. As part of this process, the ALJ evaluates the claimant's functional limitations in six different domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 290 (W.D.N.Y. 2021). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.924(d)(1).

## DISCUSSION

### I. The ALJ's Decision

The ALJ determined that J.D.R. had engaged in substantial gainful activity since Plaintiff's application date of August 24, 2018. Tr. 14. She also found that J.D.R. suffered from the following severe impairments: a seizure disorder and a speech delay. *Id.* The ALJ concluded, however, that J.D.R.'s seizure disorder and

4

speech delay did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* She also concluded that J.D.R.'s seizure disorder and speech delay did not functionally equal one of the listed impairments. Tr. 15. Therefore, according to the ALJ, J.D.R. had not been under a disability since the application date of August 24, 2018. Tr. 19.

## II. Plaintiff's Argument

Plaintiff argues that the ALJ's determination—that J.D.R.'s seizure disorder and speech delay did not functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1—was unsupported by substantial evidence for three reasons. *See* Dkt. 8-1, at 9-19. First, Plaintiff claims that the ALJ "failed to provide any cogent explanation with sufficient specificity" as to why she found that J.D.R. had "less than marked limitations versus marked or extreme limitations." *Id.* at 9. Second, she claims that the ALJ relied on her own lay opinion by improperly rejecting the opinions of Rachel S. Dake, J.D.R.'s daycare provider, consultative examiner Dan-Thanh Nguyen, M.D., and pediatric nurse practitioner ("PNP") Carolyn Dickinson. *See id.* at 13-17. Lastly, Plaintiff argues that the ALJ impermissibly relied on the non-examining opinion of R. Mohanty, M.D. *See id.* at 18-19. As set forth below, Plaintiff's arguments are without merit.

## III. Analysis

In evaluating a claimant's functional limitations in the six different domains listed in section 416.926a(b)(1), for a claimant to be declared disabled, the ALJ must find "marked" limitations in two or more domains or an "extreme" limitation in one

or more domains. 20 C.F.R. § 416.926a(d). The ALJ in J.D.R.'s case found that he had no limitations in acquiring and using information, attending and completing tasks, and moving about and manipulating objects. *See* Tr. 15. But the ALJ did find that J.D.R. had less than marked limitations in his ability to interact and relate with others, to care for himself, and in his health and physical well-being. *Id.*

**A. The ALJ properly explained his step three determination.**

Plaintiff argues that the ALJ did not "provide any cogent explanation with sufficient specificity" for her conclusion that J.D.R. did not have any marked or extreme limitations in the six functional domains. Dkt. 8-1, at 9.

In support of her conclusion that J.D.R. had less than marked limitations in his ability to interact and relate with others, to care for himself, and in his health and physical well-being, the ALJ noted:

> [J.D.R.'s] speech is 50% intelligible according to the latest assessment (Ex. 9F at 40). He has a speech delay and that is the only delay assessed (Exs. 8F & 9F). Additionally, records indicate, based on [Plaintiff's] report, [that J.D.R.] requires some assistance with some hygiene and dressing (Exs. 5E, 6E, and Hearing testimony). However, given [J.D.R.'s age,] that is not unusual. In terms of health and physical well-being, [J.D.R.] does have seizures. Additionally, [J.D.R.'s] pediatrician found that [his] seizure disorder do[es] not limit [J.D.R.] (Ex. 8F). For example, [J.D.R.] had a normal EEG[, and t]here was no focal or epileptiform abnormalities (Exs. 1F at 10 & 2F at 92).

Tr. 18.

As for her conclusion that J.D.R. had no limitations in his ability to acquire and use information, to attend and complete tasks, and to move about and manipulate objects, the ALJ pointed out:

6

> There is no evidence of any Early Intervention evaluation resulting in limitation in th[ese] domain[s]. While [a] school assessment from [J.D.R.'s] teacher indicates some issues in some areas, it is also clear [that] he has missed a lot of days of school (33 of 84) and been late many [days] as well (26 of 84) (Ex. 10E). In addition, [J.D.R.'s] gross motor [function was] appropriate on exam, [as] he was able to hold [a] pencil with [a] full fist and scribble on paper (Ex. 9F). In that same Exhibit on page 5, [J.D.R.'s] teacher indicated [that] he has no problems with respect to moving about and manipulating objects.

Tr. 18. The ALJ also considered Plaintiff's testimony and the opinions of Ms. Dake, Dr. Nguyen, PNP Dickinson, and the state agency review consultants when evaluating J.D.R.'s functional limitations. *See* Tr. 18-19.

Plaintiff claims that the "ALJ failed to even discuss the domains individually, give a definition of each domain and the age-appropriate expectations," or give "a summary of J.D.R.'s functioning within each domain." *See* Dkt. 8-1, at 12. But an ALJ's analysis does not need to be structured in such a rigid way—rather, she must employ the "whole child" approach. *See Teena H. o/b/o N.I.K*, 521 F. Supp. 3d at 291 (quoting *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019)). This "whole child" approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitation in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* (internal quotation marks omitted).

Based on a review of the record and the ALJ's decision, it is clear that the ALJ considered J.D.R.'s seizure disorder and speech delay and how those

7

impairments impacted his ability to function on a daily basis. *See, e.g., McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013)) (noting that an ALJ's factual determination needs only to "afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous."). Plaintiff's first argument, therefore, is without merit.

### B. The ALJ properly considered the opinions of Ms. Dake, Dr. Nguyen, and PNP Dickinson.

Plaintiff also argues that the ALJ relied on her own lay opinion by improperly rejecting the opinions of Ms. Dake, Dr. Nguyen, and PNP Dickinson. *See* Dkt. 8-1, at 12-17.

To begin, the ALJ followed the requirements of section 416.920c when evaluating the three opinions. *See Angela H.-M. v. Comm'r of Soc. Sec.*, — F. Supp. 3d —, No. 6:20-CV-06676 EAW, 2022 WL 4486320, at *4 (W.D.N.Y. Sept. 27, 2022) (discussing the process by which an ALJ may properly evaluate a medical opinion under 20 C.F.R. § 416.920c). She articulated how persuasive she found all three opinions and discussed the "supportability" and "consistency" of each opinion, as relevant. *See* Tr. 18-19. As such, Plaintiff's arguments challenge the ALJ's weighing of the opinion evidence rather than the process by which she evaluated the opinions. *Cf. Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d at 292 ("As an initial matter, Plaintiff's argument—that the evidence supports marked limitations in the domains of acquiring and using information, attending and completing tasks,

8

interacting and relating with others, and caring for himself—is based largely on his disagreement with how the ALJ weighed the evidence, and he identifies no specific legal error committed by the ALJ."); *see Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").

1. Ms. Dake's Opinion

Ms. Dake, J.D.R.'s daycare provider, completed a teacher's questionnaire on February 4, 2020. *See* Tr. 448-55. She opined that J.D.R. had problems attending and completing tasks, interacting and relating with others, and caring for himself, but no problem in moving about and manipulating objects. *See id.* Since Ms. Dake was a "nonmedical source," the ALJ did not need to articulate how she considered the opinion in the same manner as those of Dr. Nguyen and PNP Dickinson. *See* 20 C.F.R. §§ 416.902(j)(2), 416.920c(d). Nevertheless, the ALJ found Ms. Dake's opinion "partially persuasive because [it was] consistent with the overall evidence of record showing no significant limitations." Tr. 18. The ALJ noted, however, that there was no evidence in the record that J.D.R. had problems attending and completing tasks. *Id.*

Plaintiff argues that the ALJ should have found that J.D.R. had greater functional limitations based on Ms. Dake's opinion. *See* Dkt. 8-1, at 15. But Ms. Dake's conclusion that J.D.R. had "obvious" problems in his ability to acquire and use information and to attend and complete tasks is not the same as having a "marked" or "extreme" limitation in those areas. *See, e.g., White o/b/o T.R.W. v.*

9

*Berryhill*, No. 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) ("In her decision, the ALJ detailed the Questionnaires, and, in doing so, specifically acknowledged that several of T.R.W.'s teachers assessed him with 'serious' and 'very serious' problems in this domain. Those assessments are not necessarily inconsistent with the ALJ's conclusion that T.R.W.'s limitations were 'less than marked.'"). Plaintiff does not point to any evidence proving that J.D.R. had more significant limitations than those opined by Ms. Dake. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *see also Harrison v. Apfel*, 62 F. Supp. 2d 1047, 1053 (W.D.N.Y. 1999) ("As previously noted, while there was some evidence in the record that Jermaine's cognitive functions were generally low to average, such a level of impairment does not rise to the level of a marked impairment for purposes of finding an SSI disability. It is the plaintiff's burden of proof to establish that the child meets the requisite tests."). As such, the ALJ properly considered Ms. Dake's opinion.

2. Dr. Nguyen's Opinion

Dr. Nguyen performed a consultative examination on January 29, 2020, opining that J.D.R had a significant interference with communication due to a speech defect. *See* Tr. 886. Dr. Nguyen also concluded that J.D.R. had moderate limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and

health and physical well-being. *See* Tr. 867-68. The ALJ found Dr. Nguyen's opinion "not persuasive" as it was "not consistent with the medical evidence of record." Tr. 18. The ALJ pointed to a lack of evidence "showing significant limitation in these areas" and to J.D.R.'s appropriate gross motor skills on examination, such as his ability to hold a pencil with a full fist and scribble on paper. *See id.* (citing Tr. 914).

Plaintiff argues that the ALJ needed to recontact Dr. Nguyen before rejecting her opinion, since "Dr. Nguyen based [her] opinion on [her] own expertise as a medical doctor, something the ALJ [was] not." Dkt. 8-1, at 13. An ALJ, however, is allowed to choose between properly submitted medical opinions and does not need to recontact a physician absent an "obvious gap" in the treatment record. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)) (noting that "while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [she] is not free to set [her] own expertise against that of a physician who [submitted an opinion to or] testified before [her].") (internal quotation marks omitted) (second and fourth alterations in original); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) ("Specifically, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). Dr. Nguyen's consultative examination did not create a

clear evidentiary gap in the record, so the ALJ was not obligated to recontact her before discounting the opinion.

In a similar vein, Plaintiff asserts that the ALJ should have ordered another consultative examination before discounting Dr. Nguyen's opinion. *See* Dkt. 8-1, at 16. An ALJ has the "discretion on a case-by-case basis to determine whether a consultative examination is needed, and [she] is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014); *see* 20 C.F.R. § 416.919a. There was no conflict or ambiguity created by Dr. Nguyen's opinion—rather, the ALJ found that there were no formal evaluations or objective documentation supporting Dr. Nguyen's conclusions. *See* Tr. 18; *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (concluding that an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.") (citation omitted). The ALJ was not required to order another consultative examination on the basis of Dr. Nguyen's opinion.

### 3. PNP Dickinson's Opinion

On March 27, 2020, PNP Dickinson[4] completed medical opinion statement regarding J.D.R.'s seizures. *See* Tr. 870-73. She opined that J.D.R. experienced

---

[4] Plaintiff points out that the ALJ attributed PNP Dickinson's opinion to Gary Meyers, M.D., J.D.R.'s pediatric neurologist. *See* Dkt. 8-1, at 9, 16; Tr. 17, 19. Dr. Meyers and PNP Dickinson work together at the same practice. *See Our Team— Child Neurology*, University of Rochester Medical Center, https://www.urmc.rochester.edu/neurology/our-divisions/child-neurology/our-

seizures once a week but that they did not impair J.D.R.'s daily activities. *See* Tr. 870-71. The ALJ found PNP Dickinson's statement about the frequency of J.D.R.'s seizures unpersuasive because it was "clearly based solely upon J.D.R.'s mother['s] report in their March 24, 2020 telephone conversation, which [was] contrary to all her statements to other treating providers." Tr. 19. But the ALJ did find persuasive PNP Dickinson's opinion that J.D.R.'s weekly seizures did not interfere with his daily activities, since the record evidence showed normal EEG findings that documented a lack of focal or epileptiform abnormalities. *See id.* (citing Tr. 478, 576).

Plaintiff objects to the ALJ's rationale for rejecting the frequency portion of the PNP Dickinson's opinion. *See* Dkt. 8-1, at 17. Specifically, Plaintiff asserts that it was "unclear why [Plaintiff's] reports of seizures were suddenly not reliable," given the fact that all of the other reports of seizures in the record were based on Plaintiff's reports. *Id.* The ALJ, however, did not reject this portion of the opinion because it was based on a report made by Plaintiff over the phone—she rejected it because it was inconsistent with Plaintiff's other reports regarding the frequency of J.D.R.'s seizures. *See* Tr. 899-901, 905 (Plaintiff's prior reports that J.D.R. generally experienced a seizure on a monthly basis). The ALJ's decision to reject

---

team.aspx (last visited Feb. 27, 2023). Even if the ALJ made a mistake, this error was harmless because all medical opinions, whether from a physician or a nurse practitioner, are evaluated under the same standard. *See* 20 C.F.R. §§ 416.913(a)(2), 416.920c(a).

13

the frequency portion of PNP Dickinson's opinion was supported by substantial evidence.

In sum, the evaluation of Ms. Dake's, Dr. Nguyen's, and PNP Dickinson's opinions was a task wholly within the province of the ALJ. *See Venio v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *see also Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Plaintiff failed to show that no reasonable factfinder could look at the three opinions and arrive at the same conclusions as the ALJ. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Plaintiff's second argument fails because the ALJ's consideration of the three opinions was supported by substantial evidence and free from legal error.

### C. The ALJ could partially rely on the opinion of non-examining physician Dr. Mohanty.

Plaintiff's final argument is that the ALJ improperly relied on the opinion of non-examining physician Dr. Mohanty. *See* Dkt. 8-1, at 18-19. She claims that, at the time of Dr. Mohanty's opinion, J.D.R.'s treatment record was "remarkably incomplete" and that J.D.R.'s subsequent treatment for seizures and development of a speech delay rendered the opinion stale. *See id.* at 18.

A "stale opinion" is one that was "rendered before some significant development in the claimant's medical history." *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021) (quoting *Steve P. v. Comm'r of Soc. Sec.*,

14

No. 19-CV-0492 MWP, 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021)) (internal quotation marks omitted). While the passage of time does not necessarily render an opinion stale, a fresh opinion must necessarily "account for the claimant's deteriorating condition." *Biro v. Comm'r of Soc. Sec.*, 355 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). In considering whether an opinion is stale, reviewing courts have "frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's condition." *Vincent B.*, 561 F. Supp. 3d at 367 (quoting *Nagy v. Saul*, No. 19-CV-300-MJR, 2020 WL 3118569, at *5 (W.D.N.Y. Jun. 12, 2020)) (internal quotation marks omitted).

Here, as a part of the initial disability determination, Dr. Mohanty opined that J.D.R. had a less than a marked limitation in his health and physical well-being and no limitations in the other five functional areas. *See* Tr. 305. Dr. Mohanty also noted that J.D.R. had not experienced any seizures since starting an antiepileptic. *Id.* The ALJ, while acknowledging that Dr. Mohanty did not examine J.D.R., found his opinion "persuasive" because it was consistent with the overall evidence. *See* Tr. 19.

The ALJ was required to consider Dr. Mohanty's opinion, so it was not error for her to use it in making her disability determination. *See* 20 C.F.R. § 416.913a(b)(1). While Dr. Mohanty did not consider any evidence of J.D.R.'s speech delay, the existence of that disorder, according to the ALJ, was not confirmed until January 30, 2020. *See* Tr. 17 (citing *id.* at 911). But even in partially relying on Dr. Mohanty's opinion, the ALJ still considered J.D.R.'s speech

15

delay and found it to be a severe, medically determinable impairment at step two. *See id.* at 14. In fact, the ALJ found J.D.R. to be more limited than Dr. Mohanty. *See* Tr. 14-15, 305-07; *see also Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6527-FPG, 2020 WL 4333340, at *3 n.2 (W.D.N.Y. Jul. 28, 2020) ("Plaintiff also appears to take issue with how the ALJ evaluated the opinion of the non-examining state agency consultant, but precisely what fault Plaintiff finds is not clear. As far as the Court can tell, it appears that the ALJ found Plaintiff to be more limited than the state agency consultant.").

The situation would have been different if Dr. Mohanty's opinion was the only opinion in the record on which the ALJ could have relied. *See Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) ("The sole evidence before the ALJ refuting Pratts's claims of disabling pain and illness, therefore, was an incomplete medical history and an expert opinion rendered from it. Such a record offers us no basis to find the substantial evidence necessary to uphold the ALJ's decision."). But as mentioned above, the ALJ also considered J.D.R.'s treatment records, Plaintiff's testimony, and the opinions of Ms. Dake, Dr. Nguyen, and PNP Dickinson in reaching her conclusion that J.D.R. was not disabled. *See* Tr. 16-19. As such, the ALJ's partial reliance on Dr. Mohanty's non-examining opinion was not error.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 10) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8). The Clerk of the Court will close this case.

SO ORDERED.

Dated:   March 2, 2023
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE